The plaintiff, Phillip Clark Austin, appeals from a denial of a motion for judgment notwithstanding the verdict or in the alternative, motion for new trial following a jury verdict finding that Austin's claim against the defendant, Daryl Dewayne Cox, for injuries received in an automobile accident was barred by accord and satisfaction.
In an earlier proceeding in this case, the Circuit Court of Jefferson County granted summary judgment in favor of Cox, and Austin appealed. This Court in Austin v. Cox,492 So.2d 1021 (Ala. 1986), reversed and remanded for a determination of the single issue of whether Austin had ratified a pro tanto release between Austin's insurer and Cox, relieving Austin of further liability.
Appellant Austin asserts three errors on appeal: First, that the trial court erred in denying Austin's motion for summary judgment that was supported by affidavit and was not rebutted by any counter evidence or affidavits on the part of Cox; second, that the jury verdict was not supported by the evidence elicited at trial; and third, that the issue of the intended effect of the pro tanto release (and the interpretation thereof) was a matter of law and not a matter of fact.
Because of the ultimate disposition of this case, we need not discuss Austin's first contention of error in the denial of his summary judgment.
In discussing Austin's second and third assertions of error, it is essential for us to look at this Court's initial treatment of Austin's contentions regarding the accord and satisfaction. In the first review of this case, this Court reversed and remanded for a determination of the single issue of "whether there was an 'assent or meeting of the minds' or ratification" of the release that presented a factual question dependent upon Austin's subjective intent. Austin v.Cox, 492 So.2d at 1023. Therefore, the instruction to the trial court, and the one understandably followed by it, was to determine whether Austin had ratified the release executed between his insurer and *Page 378 
Cox. This Court has stated the rule regarding when the intent to ratify may be inferred, saying:
 "Intention, express or implied, to ratify an unauthorized act is a material factor in an inquiry of ratification vel non by an asserted principal; and the intent requisite may be inferred where there is evidence tending to show that the asserted principal, with adequate knowledge of the facts and circumstances, so conducted himself as to evince his purpose to confirm or adopt the unauthorized act of another. With respect to ratification, a distinction is taken between unauthorized acts of one not an actual agent and acts by an actual agent in excess of his authority. To establish ratification in the former instance requires more evidence than in the latter instance. . . .
 "While silence alone will not always suffice to even invite a conclusion that ratification was effected; yet under the related circumstances, shown to have been known to the asserted principal, silence may afford evidence from which the jury may infer an intent to ratify."
Birmingham News Co. v. Birmingham Printing Co.,209 Ala. 403 at 407, 96 So. 336 at 340 (1923).
This court in Jawad v. Granade, 497 So.2d 471 (Ala. 1986), stated:
 "Jury verdicts [where supported by the evidence] are presumed to be correct and no ground for granting a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence. . . ."
Jawad v. Granade, 497 So.2d at 476, quoting Cobbv. Malone, 92 Ala. 630, 9 So. 738 (1891).
The record at trial reflected the fact that Austin had knowledge of the facts and circumstances surrounding the signing of the release binding his agent (the insurer) and Cox. It was well within the jury's discretion to interpret the facts and circumstances to conclude that Austin had ratified the release.
However, while the evidence was sufficient to support a jury verdict that Austin had ratified the pro tanto release (the only issue presented and addressed in the first appeal), we must now address what should have been the initial question concerning the intent of Austin's insurer and Cox. Only after it has been decided what the intended scope of the instrument is may we determine whether Austin's ratification of that instrument will act to extinguish Austin's claim against Cox. The Supreme Court of South Carolina correctly explained this rationale in Brazell Brothers Contractors v. Hill,245 S.C. 69, 138 S.E.2d 835 (1964), stating:
 "Ratification, as the term implies, is the adoption by one person of an act done or bargain made for him by another under such circumstances that he would not have been bound but for his subsequent assent. First Carolinas Joint Stock Land Bank v. Stuyvesant Ins. Co., 168 S.C. 37, 166 S.E. 883, 886. Ratification may be either express or implied. We think that the reliance by the Brazells upon the release was such an adoption of it as to import their assent to whatever was undertaken by the carrier in order to induce Hill to settle.
 "To ratify is to sanction or affirm, to give validity to something done for one by another, not to contract anew or upon different terms. Therefore, the adoption by the Brazells of the bargain made for them by the carrier can rise no higher as a bar to this action than the terms of that agreement. The critical question is whether the record is reasonably susceptible of an inference that the carrier and Hill intended that their agreement should acquit Hill of liability to the Brazells. If not, the subsequent ratification of the transaction by the Brazells, which raised no new promise, could not have that effect."
Brazell Brothers Contractors v. Hill, 245 S.C. 69 at 75, 138 S.E.2d at 837. The South Carolina Court in BrazellBrothers Contractors v. Hill, supra, further stated:
 "The written release is the sole evidence of the terms of the compromise and settlement between Hill and the carrier. No attempt whatever has been *Page 379 
made to vary, enlarge or contradict its terms, which are clear and unambiguous. It would be useless to quote it or further expound its provisions. It is a classic example of a unilateral contract; a promise by Hill only, the consideration on the other side being executed by the payment of a sum of money. 43 Words and Phrases 242; McMahon v. McMahon, 122 S.C. 336, 115 S.E. 293, 26 A.L.R. 1295."
Brazell Brothers Contractors v. Hill, 245 S.C. 69 at 75, 138 S.E.2d at 838.
It is well established in Alabama that when an instrument is unambiguous its construction and legal effect will be based upon what is found within its four corners. The determination of whether an instrument is ambiguous is a question of law for the court to decide. Only when the trial judge has ruled that the instrument is ambiguous in its terms as to the intent of parties will it be submitted to a jury. See Williams v.Nolin, 484 So.2d 428 (Ala. 1986).
In this case, the burden was on Cox to affirmatively set out the limits of the release. Where, as here, no mention was made in the release between Cox and Austin's insurer of Austin's claim against Cox, the fact that Austin may have ratified that agreement has no effect on Austin's claim against Cox. InJehle-Slauson Const. Co. v. Hood-Rich Architects Consulting Engineers, 435 So.2d 716 (Ala. 1983), the Court lent support to this argument when discussing a release executed by Jehle-Slauson and Hood-Rich whereby Jehle-Slauson released Hood-Rich of "all claims, demands, damages, costs, expenses, actions and causes of action, whether contract or tort, arising directly or indirectly out of or in any manner relating to work performed." Jehle-Slauson asserted that "the release [did] not apply to causes of action that had not matured as of the date of the execution of the release."Jehle-Slauson, 435 So.2d at 720. The Court addressed this issue, saying:
 "If the parties had intended to limit the release to prior contract litigation, they could have specifically stated their intention in the release. Jehle-Slauson could have preserved all claims against Hood-Rich that could arise in the future."
Jehle-Slauson, 435 So.2d at 720. The Court added:
 "Since Jehle-Slauson drafted the release releasing Hood-Rich from all liability arising from the claims that arose from the repair of the Howard Johnson's, with knowledge of the impending litigation of the dry wall problem, then it can only be assumed that the intent of the parties was to release Hood-Rich from all claims including those that had not matured at the time the release was executed."
Jehle-Slauson, 435 So.2d at 720.
A similar rationale may be applied here. In the release executed between Austin's insurer and Cox, there was no language like that found in Jehle-Slauson, supra, releasing "all claims." Rather, the release executed here released Austin of any claim Cox may have had against him arising out of this particular set of facts. The release stated, in part:
 "Daryl Dewayne Cox and Dan T. Cox do hereby release and forever discharge the said Phillip Clark Austin, his heirs and assigns, of any and all claims, known or unknown, and any and all individual liability now existing or which may hereinafter arise on the part of Daryl Dewayne Cox for injuries and damages sustained in the accident made the basis of this suit, specifically reserving to the said Daryl Dewayne Cox, however, without impairing their rights to proceed against the City of Birmingham, and any fictitious parties named in the pleadings filed in behalf of Daryl Dewayne Cox and Dan T. Cox. . . ."
Here, Cox, as the drafter of the release, with full knowledge of the pending suit against him by Austin, did not include any language that would bar Austin's suit.
Therefore, in summation, whether Austin's claim is barred by his ratification of the release executed between his insurer and Cox is dependent upon whether, within the court's opinion, the instrument is ambiguous or unambiguous insofar as it may *Page 380 
extinguish Austin's claim against Cox. If ambiguous, the interpretation of the intent of the instrument is a question of fact to be determined by the jury. If unambiguous, the intent of the instrument may be decided as a matter of law by the court.
We do not find it necessary to remand to the trial court for a determination as to the intent of the instrument, because we find it unambiguous as to Austin's claim against Cox; we can say, as a matter of law, that in this particular case this release, as written, will not extinguish Austin's claim against Cox. Therefore, we affirm the finding that Austin ratified the agreement between Austin's insurer and Cox; but because we have determined, as a matter of law, that the agreement between Cox and Austin's insurer did not have the effect of extinguishing Austin's claim, we reverse and remand to the trial court for further proceedings in Austin's claim against Cox, consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.